UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON KEITH GROOMS,

    Applicant,

v.                                              CASE NO. 8:14-cv-390-T-23MAP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

    Grooms applies for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for possession of a firearm by a convicted felon, for which he serves a minimum mandatory sentence of fifteen years. The respondent moves to dismiss the petition as untimely (Doc. 8). Numerous exhibits ("Respondent's Exhibit __") support the motion. The respondent correctly argues that the federal statute of limitation bars federal review.

    The Anti-Terrorism and Effective Death Penalty Act creates a limitation for a Section 2254 application for the writ of habeas corpus. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." 28 U.S.C. § 2244(d)(1)(A). Additionally, under 28 U.S.C. § 2244(d)(2), "[t]he time during

which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Grooms's conviction became final in 2007 and the limitation expired one year later, absent tolling for a state post-conviction proceeding. Grooms admits that his application is untimely under Section 2244(d)(1)(A). "Though he filed several collateral motions/petitions that tolled the one-year AEDPA statute of limitations, here petitioner acknowledges that the grounds and claims on direct appeal and on his first Rule 3.850 motion are time barred." (Doc. 1 at 12) The records provided by the respondent support this admission.

Instead Grooms asserts entitlement to a new limitation under Section 2244(d)(1)(D) based on newly discovered evidence, specifically the real identify of an individual who could provide exculpatory testimony and who Grooms previously only knew by his "street name." In his last state post-conviction proceeding, the state court ruled that Grooms failed to meet the requirements under state law for a new limitation based on "newly discovered evidence." In his federal application Grooms asserts the same factual basis for his entitlement to a new limitation based on "newly discovered evidence."

Grooms's asserted "newly discovered evidence" includes the discovery of the real name of persons Grooms previously knew only by a "street name," specifically, "Big Man" is actually Herman Reese and "Scarface" is actually Prince Kelly. Grooms's conviction for possession of a firearm by a convicted felon is based on

Grooms's attempt to sell drugs to an undercover officer, who chased Grooms through an alley and who testified that he saw Grooms discard a firearm that was later recovered during a search. When Grooms fled through the alley, "Big Man," "Scarface," and others scattered. Grooms's asserted "newly discovered evidence" also includes testimony that "Big Man" allegedly saw "Scarface" dispose of the weapon that Grooms is convicted of having possessed. "Big Man" had known Grooms for fifteen to twenty years and was Grooms's supplier.[1] Grooms admits to having eighteen prior felony convictions, including possession of a firearm.

The state court summarized Grooms's claim of "newly discovered evidence" as follows (Respondent's Exhibit 8 at 108–09):

> Defendant alleges in August of 2010, he and Mr. Herman Reese met at Apalachee Correctional Institution, West Unit, where Defendant was serving the prison sentence in this case and Mr. Reese was serving a one year and a day prison sentence on an unrelated case. Defendant alleges that he did not have a prior, pretrial knowledge of Mr. Reese's real name. Defendant alleges he only knew Mr. Reese by his street name. Defendant further alleges that during the pretrial stages of his case, he did not have any knowledge that Mr. Reese was an eyewitness to Prince Kelly possessing and discarding the firearm in the alley, which is the basis for Defendant's conviction. Therefore, Defendant alleges this information was unknown to Defendant, unknown to Defendant's trial counsel, and unknown to the Court.
>
> Defendant alleges [that, when he met Mr. Reese in the prison], Mr. Reese advised him that he witnessed Prince Kelly carry and possess the firearm in question and witnessed Mr. Kelly

---

[1] In his application, Grooms admits that "[t]he group was engaging in the sale of crack cocaine by way of petitioner and others 'running' to street buyers and setting up the deal and returning to the alleyway to retrieve the drug from one of the dealers — e.g., Herman Reese, or Prince Kelley." (Doc. 1 at 6)

- 3 -

>discard the firearm in the alley when Defendant ran through the alley yelling that the police were in pursuit of him.

After considering the testimony from the evidentiary hearing, the state court rejected Grooms's asserted entitlement to timeliness based on "newly discovered evidence" (Respondent's Exhibit 8 at 117):

>[T]he Court finds to qualify as newly discovered evidence, "(1) The evidence must have existed but have been unknown by the trial court, the party, or counsel at the time of trial, and must not have been discoverable through the use of due diligence, and (2) the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial or yield a less severe sentence." *Jones v. State*, 709 So. 2d 512, 521 (Fla 1988) ("*Jones II*"). "Newly discovered evidence satisfies the second prong of the *Jones II* test if it 'weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.'" *Id.* at 526 (quoting *Jones v. State*, 678 So. 2d 309, 315 (Fla. 1996)). The Court finds Mr. Reese's testimony that he saw Prince Kelly throw a gun in the alley would not produce an acquittal on retrial or yield a less severe sentence in light of the fact that Detective Balkcom testified at trial that he saw Defendant throw the gun down and Mr. Reese could not testify that Defendant did not have a gun on him in his pants on that day. Consequently, the Court finds Mr. Reese's testimony does not qualify as newly discovered evidence.

The state court's written opinion, which was issued after conducting an evidentiary hearing, contains many findings of fact. Grooms bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). As a consequence, a state court's finding of fact

generally binds a federal court, but a state court's determination of entitlement to a new limitation under state law based on "newly discovered evidence" is not binding. A federal court's application of the facts to determine an applicant's entitlement to a new limitation under Section 2244(d)(1)(D) is independent of a state court's determination under state law.

Under Section 2244(d)(1)(D), the one-year limitation begins from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The start date is not when the new evidence was actually discovered, but when the evidence was discoverable, as *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008), *cert. granted and judgment vacated on other grounds*, 561 U.S. 1001 (2010), explains:

> The limitations period under § 2244(d)(1)(D) begins when the factual predicate of a claim could have been discovered using due diligence, not when it was actually discovered. *See* § 2244(d)(1) (D); *Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir. 2004). Although we have not defined due diligence with respect to a § 2244(d)(1) (D) claim, we have addressed it in the analogous context of a second federal habeas petition which is based on newly discovered facts. *See In re Boshears,* 110 F.3d 1538, 1540 (11th Cir. 1997) (*per curiam*). In the latter context, a petitioner must show that "'the factual predicate for the claim could not have been discovered previously through the exercise of due diligence.'" *Id.* (quoting 28 U.S.C. § 2244(b)(2)(B)(I)). Due diligence means the petitioner "must show some good reason why he or she was unable to discover the facts" at an earlier date. *Id.* Merely alleging that an applicant "did not actually know the facts underlying his or her claim does not pass the test." *Id.* Instead, the inquiry focuses on "whether a reasonable investigation . . . would have uncovered the facts the applicant alleges are 'newly discovered.'" *Id.* (citation omitted).

Unlike the state's requirement to show both that due diligence was exercised in discovering the new evidence and that the new evidence "would probably produce an acquittal on retrial or yield a less severe sentence," the federal standard focuses solely on the exercise of due diligence. "Whether or not the state prisoner's claimed newly discovered evidence is sufficient to merit federal habeas relief is not, however, the standard for determining the appropriate triggering date. *See* 28 U.S.C. § 2244(d)(1)(D). Rather, the appropriate standard is whether or not the state prisoner exercised due diligence in discovering the factual predicate for his claim." *Frederick v. McNeil*, 300 Fed. App'x 731, 734 (11th Cir. 2008).

The respondent argues (Doc. 8 at 7–8) that Grooms failed to exercise due diligence to discover the purported new evidence:

> [Grooms] does not set forth any facts demonstrating that he made reasonable efforts, or any efforts, to determine Reese's identity earlier. Stated otherwise, petitioner does not set forth a basis for concluding that he could not have discovered earlier than August 30, 2010, the factual predicate for his claim. . . . [I]t it is clear from petitioner's petition that he has been aware of Reese's presence at the scene since the date of his arrest. Although petitioner asserts that he did not know Reese's real name until August 30, 2010, he does not allege that he made any efforts to determine Reese's identity prior to that time. He admits that he did know Reese by his street name, but does not indicate that he ever provided his attorney with that street name or asked his attorney to attempt to find out the identity of the person using that street name, ever mentioned to his attorney that there were two drug dealers present at the scene, or ever asked his attorney to attempt to find out the identity of the second dealer.

Grooms counters by arguing (1) that he did not offer proof of due diligence during the state proceeding because the state did not argue that he had failed to exercise due

diligence and (2) that he would have proven his due diligence through testimony from his trial counsel that Grooms told counsel the "street names" of the persons present in the alley and that counsel was unable to locate them. Grooms was required to prove due diligence during the state proceeding under the state's "newly discovered evidence" standard. Grooms's above statements are an admission that he did not develop his factual basis for due diligence during the state proceeding, and he discloses nothing that precluded his proving his due diligence during the state proceeding. Reese ("Big Man") testified that he knew Grooms for fifteen to twenty years and that he knew Grooms's brother. Grooms fails to prove that the factual basis for his claim could not have been discovered using due diligence and that the discovery could not have occurred before the one-year deadline after his conviction became final.

Accordingly, the motion to dismiss (Doc. 8) is **GRANTED**. The application for the writ of habeas corpus is **DISMISSED** as time-barred. The clerk must close this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Grooms is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right." To merit a COA, Grooms must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because Grooms fails to prove entitlement to a delayed limitation, the application is untimely and Grooms cannot meet *Slack*'s prejudice requirement. 529 U.S. at 484. Finally, because Grooms is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Grooms must pay the full $505 appellate filing fee unless the circuit court allows Grooms to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on August 17, 2015.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE